467-08/ROSS/PLS
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, New York 10005
(212) 425-1900
James L. Ross (JR 6411)
Pamela L. Schultz (PS 8675)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
SEAPORT SHIPPING NV,

                 Plaintiff,        08 CV

   - against –        **VERIFIED COMPLAINT**

TOPSITE PARTNERS LTD.,
                 Defendant.
----------------------------------------------------------x

     Plaintiff, SEAPORT SHIPPING NV, (hereinafter "Seaport"), as and for its Verified Complaint against the named Defendant TOPSITE PARTNERS LTD. (hereinafter "Topsite") alleges upon information and belief as follows:

     1.   This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333. Jurisdiction is also proper pursuant to the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 and the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

     2.   At all times relevant hereto, Plaintiff Seaport was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address in the Netherland Antilles.

NYDOCS1/311174.1

3. At all times relevant hereto, Defendant Topsite was and still is a foreign business entity organized and existing under the laws of a foreign country with an address at 55 Ave Chavchavadze 0160 Tbilisi Georgia.

4. Defendant Topsite utilizes other entities including but not limited to Amalfi Group Ltd. and Sideco Ltd., which act in the capacity as an agent(s) and/or manager(s) and/or paying agent(s) of Defendant Topsite and which receive, hold and/or transfer assets for and on behalf of Defendant Topsite.

5. On or about June 25, 2008, Plaintiff Seaport, in the capacity as owner of the M/V GOKCHE entered into a maritime contract of charter party on a 1976 Gencon form with Defendant Topsite (hereinafter "C/P") for the carriage of a cargo of about 2,000 metric tons of scrap from Oran, Algeria to Marmara/Nemrut Bay in Turkey. A copy of the fixture recap for the C/P is annexed hereto as **Exhibit A**.

6. On or about July 11, 2008, while the vessel was in Oran, Algeria, Plaintiff Seaport tendered a notice of readiness indicating that the vessel was ready to load pursuant to the C/P.

7. In breach of the C/P, Topsite failed to provide a cargo to load and on or about August 12, 2008, Topsite wrongfully cancelled the C/P.

8. In an effort to mitigate its losses as a result of the breach of the C/P, Seaport immediately sought to mitigate its losses by finding substitute employment at the port of Oran, but was unable to do so at that port.

9. As a further effort to mitigate its losses, the vessel proceeded to Istanbul, Turkey on a nine day voyage in an effort to find substitute employment in Turkey.

10. As a direct consequence of Topsite's cancellation and breach of the C/P, Plaintiff Seaport lost net profits in the amount of $257,914.42 and sustained further losses in the form of lost employment/demurrage of the vessel for the nine day voyage to Turkey in the amount of $45,000 and bunker consumption of $31,000.

11. Despite diligent efforts, Plaintiff has been unable to find substitute employment, and therefore the full extent of damages sustained as a result of the breach is unknown at this time, and damages continue to accrue. Plaintiff Seaport specifically reserves its right to seek additional damages from Defendant Topsite once the full extent of damages is known.

12. The C/P is governed by English law and all disputes between the parties are to be resolved by arbitration in London. Plaintiff Seaport reserves the right to have the substantive aspects of these matters determined in arbitration.

13. Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorney fees, arbitrators' fees, disbursements and interest are recoverable.

14. Pursuant to the New York Convention and Supplemental Admiralty Rule B, Plaintiff Seaport is entitled to security.

15. Plaintiff estimates, as nearly as can be computed, that the anticipated attorney fees and costs (including arbitrators' fees) to arbitrate the claim in London will be $72,000, and that interest on the claim will accrue in the sum of $44,167.14 (computed at the rate of 5% through the completion of the arbitration in approximately 2 ½ years).

16. This action is brought to obtain security in favor of Plaintiff in respect to its claim against Defendant Topsite in aid of arbitration and for any additional sums to cover Plaintiff's anticipated attorney fees and costs in the London arbitration and interest as outlined above.

17. Upon information and belief, and after investigation, Defendant Topsite as identified in this action cannot be "found" within this district for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (hereinafter, "assets"), including assets in the name of its paying and/or funding agent(s) Amalfi Group Ltd. and Sideco Ltd., at moving through banking institutions and/or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

WHEREFORE, Plaintiff prays:

a. That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendant Topsite, citing it to appear and answer under oath all and singular the matters alleged, failing which a default will be taken against it;

b. That since Defendant Topsite cannot be found within this District pursuant to Supplemental Rule B, that all assets of Defendant Topsite (as identified herein) up to and including the sum of $450,081.56 be attached and seized, including but not limited to any cash, funds, credits, wire transfers,

electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendant Topsite (as identified herein), including those in the name of its paying and/or funding agent(s) Amalfi Group Ltd. and Sideco Ltd., at, moving through, or within the possession, custody or control of banking institutions and/or any other garnishee(s) upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served; and

c. That an Order be entered directing Defendant Topsite to proceed to London arbitration for the adjudication of the merits of the claims;

d. That this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary; and

e. For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
August 26, 2008

        FREEHILL HOGAN & MAHAR, LLP
        Attorneys for Plaintiff
        SEAPORT SHIPPING NV

        By: _____
        James L. Ross (JR 6411)
        Pamela L. Schultz (PS 8675)
        80 Pine Street
        New York, NY  10005
        (212) 425-1900
        (212) 425-1901 fax

## ATTORNEY VERIFICATION

State of New York  )
                         ) ss.:
County of New York  )

       JAMES L. ROSS, being duly sworn, deposes and says as follows:

1.     I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.     The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

3.     The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

                                                   _____
                                                       JAMES L. ROSS

Sworn to before me this
26th day of August 2008.

_____
Notary Public

MARTHA L. BROWN
Notary Public, State of New York
No. 01BR6067399
Qualified in Kings County
Certificate Filed in New York County
Commission Expires December 10, 2009

FIXTURE RECAP
----- Original Message -----
From: "Flipper Shipping" <chartering@flippershipping.com>
To: "Troy Shipping" <troy@troyshipping.com>
Sent: Wednesday, June 25, 2008 1:14 PM
Subject: MV GOKCHE - ORAN OR ARZEW / NEMRUT OR MARMARA-SCRAP-ACCOUNT TOPSITE

PARTNERS-CP DD 25TH OF JUNE 2008


Flipper Shipping And Trading Ltd.
Kazim Ozalp Caddasi Alan Sokak No:3
Suadiye  34740   Istanbul / Turkiye
Phone : + 90 216 360 76 71 Pbx
Fax    : + 90 216 360 25 19
E-mail : chartering@flippershipping.com


EXHIBIT A

Web : www.flippershipping.com

Küntay abi / gökhan

Ref mv Gokche - Account Topsite Partners-cp dd 25/06/2008

cfm having clean fixed

mv gokche
as described

- a/c topsite partners ltd
- oran or arzew / 1 marmara or nemrut chopt
  1/1 gspb aaaa be -no restrictions bends for
  this vessel
- lport would be nominated 4 days prior loading
- dport would be nominated 2 days after vsl's
  sailing fm lport
- up to full cc harmless, non dangerous, non oily,
  non imo, no motorblocks turnings, no heavy
  pieces, no oversizing 'no radioactive, no slags, non
  explosive, no turning,all lawful scrap sf 120' wog
- laycan 7-18 july 2008
- freight usd 189000 lumpsum fios to Nemrut Bay bss 1/1
- freight usd 199000 lps fios to marmara bss 1/1
- frt pable on signing bs/l 100 pct less commisions
  only w/i 3 bdays after signing bs/l. in any case bbb which
  one comes first.
- freight deemed earned, discountless and non
  returnable when having the cargo on board
  vessesl and/or cargo lost or not lost,
- all bank charges, if any, for freight and
  brokerage remittance to be for charterers account
- bills of lading to be used with the following
  marks:
  'freight payable as per charter party dated."
- charter party dates
- 'b/l quantty to be determined as per draft survey both
  parties attending and the outcome to be inserted in the bs/l
  but master also will calculate loading quantity if so much
  difference between surveyor and master calculation which inform
  to chrtrs before signing bs/l.owns/master are not responsible if of
  any cargo shortage at disport
- b/l form to be congenbills of lading,
- b/l in strict conformity with the ms/r,
- draft bills of lading to be presented for owners' perusal/approval,
- draft survey, ship's side owners' acct, chs' side chs' acct,
- if chrtrs request, owns will allow chrts to change consignee , notify

  and destination port parts only on b(s)/l and cgo manifest.first set

of bs/l and cgo manifest will be delivered to master who will destroy
first set after he received the new set.chrts shall give loi for change
of b(s)/l and manifests with owners p&i wording.the issue of new set
of b(s)/l is always subject to owns approval of the
draft of new bs/l


- new set bills of lading can be issued after owners/master receive all old ones (set)
- if needed new set b/l discharging port agent will issue
- l/d 6 ttl days pwwd on 24 consec hrs fhex eiu ntc thunoon/sat 08 at lport sshex eiu ntc sat noon/mon 08 at dport
- dem usd 5000 pdpr/fd be
- demurrage, if any at lport to be paid together with frt, if any at disch to be settled within 10 bdays upon presentation of ownrs laytime calculation supported by all releevant docs nor,sof,duly signed/stamped by master/agent only. even by fax
- deballasting time ntc as laytime
- mooring/unmooring ntc as laytime
- chters agents in oran and arzew
- chrts agents at dport, would be adviced together with nominating dport w/i 2 days after vsl's sailing
- laytime at loadport to count untill cgo docs on board but 3 working hours not to count as lay time.inc draft survey
- time for draft survey 2 hr not count as laytime be.
- the shippers/port are allowed to press the cargo with weight of max 3 mts weight from max 3 meters height as from surface of cargo but under master's satisfaction and in accordance with ship's strengthnes. pressing is allowed only when cargo loaded in the hold at least on 30 pct of hold's volume. but iac any operation which will damage the vessel is strictly prohibited. any damage occurred to the vessel to be repaired by the stevedores. cgo's ramming / pressing must be under master's satisfaction only for safety navigation
- stevedoring damages if any to be setteled between owns and stevedoring company in any case chrtrs will be assist to solve the matter accordingly
- laytime for loading and discharging shall commence at 1400hrs pm if n.o.r is given before noon and at 0800hrs on next working day if n.o.r is given during office hours after noon
- time actually used before commencement of laytime shall not count
- nor to be tendered via cable vhf/tlx/ always w.w.w.w. within office hours 08/14 cls to be applied be
- nor to be accepted 08/14 cls bss
- shore cranes to be for chrtrs acct at both ends
- g/a, y/a rules, arb in ldn, english law to apply
- taxes / dues on cgo/frt chrtrs acct
- taxes / dues on vsl/flg / crew ows acct
- exins if any to be for chrtrs accnt

- shifting expenses if any to be for chters accnt bends
- overtime to be account of ordering party
- owise last gcn-76 mv milet with 5pct ttl com here
- end

Thks fixture

brgds.

===============================